# United States Court of Appeals
## For the First Circuit

No. 04-1584

JEAZEF ADWARD DIAB,

Petitioner,

v.

JOHN ASHCROFT, ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION REVIEW

Before

Torruella, Circuit Judge,
Selya, Circuit Judge,
and Stahl, Senior Circuit Judge.

Saher J. Macarius and Law Offices of Saher J. Macarius on brief for petitioner.
Song E. Park, Office of Immigration Litigation, Peter D. Keisler, Assistant Attorney General, and Michelle E. Gorden, Senior Litigation Counsel, Office of Immigration Litigation, on brief for respondent.

February 8, 2005

**STAHL, <u>Senior Circuit Judge</u>**.  Petitioner Jaezef Adward Diab ("Petitioner") seeks review of the Board of Immigration Appeals' ("BIA") decision to affirm the Immigration Judge's ("IJ") denial of his petition for relief from removal, withholding of removal, and protection under the Convention Against Torture ("CAT").[1]  Finding Petitioner has neither established past persecution based on a protected category, nor a well-founded fear of future persecution, we affirm.

## I.  BACKGROUND

Petitioner is an Egyptian national and a Coptic Christian.  Coptic Christians are a religious minority in Egypt and historically have been the victims of discrimination by local Egyptian officials as well as Muslim extremists.  The Egyptian national government, however, has taken affirmative steps to limit such religious discrimination over the past few years.

Petitioner resided in Egypt until 1988, at which time he moved to Greece ostensibly to escape religious persecution.  He arrived in the United States on January 12, 1997, and filed a petition for asylum on March 28, 1998.

---

[1]The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment is codified at 8 U.S.C. § 1231. While Petitioner appeals the BIA's ruling concerning his CAT claim, he makes no mention of this claim except within his statement of issues, and therefore we will not consider it upon appeal. <u>See</u> <u>Strahan</u> v. <u>Coxe</u>, 127 F.3d 155, 172 (1st Cir. 1997) (refusing to address claim mentioned only in statement of issues).

In support of his application for asylum, Petitioner testified before an Asylum Officer ("AO") that, while he resided in Egypt, he was often confronted by Muslims who asked (and attempted to bribe) him to convert to Islam. Petitioner claimed that, in 1973 and 1975, while he was attending school, he was physically attacked on account of his religion by men that he believed to be Muslim. Petitioner further testified that, while in the army in 1982, a group of soldiers beat him when he refused to convert to Islam.

Petitioner further testified that one year after moving to Greece, a Muslim extremist named Hussein stabbed him thirty-three times in his home. Petitioner claimed that he spent two weeks in a Greek hospital as a result of his injuries and that Hussein was sentenced to ten years in prison for his crime. In his application, Petitioner noted that Hussein's sentence was nearly complete, and that Petitioner had fled to the United States because he feared that either Hussein or one of his associates would attempt to harm him upon Hussein's release.

Petitioner also testified that he returned to Egypt in 1993 for twenty-three days to renew his passport, which was cheaper to renew in Egypt, and returned again in 1995, staying for twenty-five days in order to renew his visa for his stay in Greece. In December of 1996, Petitioner returned yet again, this time for a ten day visit with his mother.

The AO determined that Petitioner was not credible because his testimony was internally inconsistent, inconsistent with his written application, and vague. Specifically, the AO found that Petitioner's testimony of the incidents in Egypt did not contain the substantive detail that a credible witness would be able to provide, and that Petitioner did not mention any of the specific assaults in Egypt in his application--he only described the attack in Greece. The AO was also concerned that material aspects of the account of the attack in Greece contained in Petitioner's application were missing from his testimony. The AO's report, which recommended that Petitioner's application for asylum be denied, was sent to the IJ for use at the removal proceedings.

During the removal proceedings, Petitioner submitted various news articles and country condition reports detailing the abuse of Coptic Christians by Muslim extremists in Egypt. Petitioner also submitted an article, in Greek, that purportedly describes the knife attack.[2] When Petitioner testified before the IJ, he again asserted that he was afraid to return to Egypt because of Islamic fundamentalists generally, as well as of Hussein and his

---

[2]The article's apparent translation, written in pen on notebook paper and not in complete sentences, does not name Petitioner; it refers to the victim of the attack as "County Joseph Di from Cairo." The translation also asserts that the victim was stabbed nineteen times, not thirty-three. Respondent questions both the authenticity of the translation and whether the article actually refers to Petitioner or his story.

-4-

associates in particular.[3] The IJ, like the AO, found Petitioner not credible. Primarily, the IJ doubted Petitioner's expressed fear of returning to Egypt, given that he had returned in 1993, 1995, and 1996 for extended periods of time. In addition, the IJ found that Petitioner had not provided sufficient corroborating evidence. Petitioner submitted no hospital records or evidence corroborative of the specific allegations he made about his persecution in Egypt or the attack in Greece. The IJ denied Petitioner relief from removal under 8 U.S.C. §§ 1101(a)(42)(A) and 1158(a), withholding of removal under 8 U.S.C. § 1231(b)(3), and protection under CAT. The BIA issued an order summarily affirming the IJ's decision, and Petitioner filed this timely petition for judicial review.

## II. DISCUSSION

While this case involves judicial review of a decision by the BIA, when the BIA summarily affirms an IJ's opinion, we review the IJ's analysis. See El Moraghy v. Ashcroft, 331 F.3d 195, 203 (1st Cir. 2003). The BIA's determination must be upheld if "supported by reasonable, substantial, and probative evidence on the record considered as a whole," INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992), and will be overturned, "only when the record evidence would compel a reasonable factfinder to make a contrary

---

[3]Petitioner claims, but provides no evidence, that his attacker was a member of the Muslim fundamentalist group, Gamat Al Islamiyah.

-5-

determination." Aguilar-Solis v. INS, 168 F.3d 565, 569 (1st Cir. 1999) (citing Elias-Zacarias, 502 U.S. at 481 & n.1).

In order to qualify for asylum, an applicant bears the burden of establishing that he is a "refugee" as defined by 8 U.S.C. § 1101(a)(42)(A). 8 U.S.C. § 1158(b)(1); Mukamusoni v. Ashcroft, 390 F.3d 110, 119 (1st Cir. 2004). An applicant can meet this burden in one of two ways: (1) by demonstrating a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion, or (2) by proving past persecution on account of one of the aforementioned grounds, which entitles an applicant to a presumption of a well-founded fear of persecution. 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 208.13(b); see Yatskin v. INS, 255 F.3d 5, 9 (1st Cir. 2001). Proving past persecution, in the words of this Circuit, is "a daunting task," Guzman v. INS, 327 F.3d 11, 15 (1st Cir. 2003), and the identified conduct must go beyond "unpleasantness, harassment, and even basic suffering," Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000). Without the benefit of the presumption, an applicant must satisfy both a subjective and an objective test in order to prove a well-founded fear of future persecution. Velasquez v. Ashcroft, 342 F.3d 55, 58-59 (1st Cir. 2003); El Moraghy, 331 F.3d at 203. "The subjective test requires the applicant to prove his fear is genuine, while the objective test requires a showing by credible and specific evidence that this

-6-

fear is reasonable." Mukamusoni, 390 F.3d at 120. An applicant's testimony alone, "if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 208.13(a); El Moraghy, 331 F.3d at 203. Should the applicant be found not entirely credible, corroborating evidence, such as country condition reports, may be used to bolster an applicant's credibility. See El Moraghy, 331 F.3d at 204; see also Mukamusoni, 390 F.3d at 124. Here, Petitioner asserts that he should have been found credible, and additionally, that he produced enough corroborating evidence to support his claim of both past persecution and well-founded fear of future persecution. We disagree.

## A.        Past Persecution

To establish past persecution, Petitioner must demonstrate either through credible testimony, or a combination of testimony and corroborative evidence, that he was persecuted on the basis of his religion. See 8 C.F.R. §§ 208.13(a)and (b)(1); El Moraghy, 331 F.3d at 203-04. We begin by noting that the IJ found Petitioner's testimony not credible, and that the IJ was reasonable in this determination.[4]

---

[4]In addition to concurring with the AO's determination that Petitioner's testimony was internally inconsistent and vague, the IJ determined that Petitioner could not sufficiently justify his trips back to Egypt, discussed infra p. 12-13.

In addition, the IJ reasonably found that the evidence Petitioner provided did not adequately bolster his credibility. See Aguilar-Solis, 168 F.3d at 572. For example, to corroborate his account of the attack in Greece, Petitioner submitted an article in Greek, without providing an adequate English translation. And, the rough translation he did provide does not identify Petitioner as the victim, nor does it say that the attack was religiously motivated. As further evidence, Petitioner submitted a letter from a doctor in the United States dated June 24, 1998 (nine years after the attack) that mentions scars consistent with an attack similar to the one Petitioner described. Petitioner did not, however, submit any contemporaneous medical records from his attack or from his alleged two-week hospital stay. And, even assuming the letter from the doctor is sufficient to corroborate Petitioner's claim that he was attacked as described, it does not establish that he was attacked on the basis of his religion. Cf. Aguilar-Solis, 168 F.3d at 572 (Without corroborating evidence to prove that attacks on petitioner's village were politically motivated, the court was not compelled to find for petitioner.). Furthermore, Petitioner did not provide any police records from Hussein's arrest, nor any court records from Hussein's alleged criminal conviction.[5]  Thus, looking at the

_____

[5]It is significant that Petitioner's attack occurred in Greece.  Unlike some of the cases we review where documentation is difficult to obtain, such as in the genocide-ravaged country of

record as a whole, the IJ did not err in determining that Petitioner has not proven past persecution and therefore is not entitled to a presumption of a well-founded fear of future persecution. See 8 C.F.R. §208.13; Nelson, 232 F.3d at 264.

**B.** **Well-Founded Fear of Future Persecution**

We now turn to whether Petitioner has proven a well-founded fear of future persecution. As mentioned above, this requirement has both an objective and subjective component. See Mukamusoni, 390 F.3d at 120.

1.      Objective Fear

Beginning with the objective component, Petitioner must prove that "a reasonable person . . . would fear persecution on account of" his religion. Nelson, 232 F.3d at 264 (quoting Aguilar-Solis, 168 F.3d at 572). Petitioner must provide "credible and specific evidence that this fear is reasonable." Mukamusoni, 390 F.3d at 120 (citing El Moraghy, 331 F.3d at 203).

Although the IJ found Petitioner generally not credible, Petitioner provided supporting evidence in the form of multiple news articles concerning the treatment of Coptic Christians in Egypt, as well as a 1997 terrorist attack by Muslim fundamentalists

_____

Rwanda, Greece is a modern country, and therefore Petitioner reasonably may be expected to provide such documentation, or at a minimum, an explanation for the absence of such documentation.

-9-

in Egypt.[6]  Petitioner also supplied country condition reports on Egypt for the years 1995, 1996, 2000, and 2001.  The 2000 and 2001 reports state that Muslim extremists continue to persecute religious minorities, specifically Coptic Christians, despite the national government's efforts to ensure free exercise of religion.  The 2000 report also identifies four assaults by Muslim extremists on Coptic Christians, and notes that a trial had commenced that year for the premeditated murder of a Coptic priest by a Muslim extremist.  The 1996 report explicitly states that "[t]errorist violence against Christians was a problem," and that "[t]errorist groups seeking to overthrow the Government and establish an Islamic state continued their attacks on police, Coptic Christians, and tourists."  MB, Country Reports on Human Rights Practices, Egypt (1997) (emphasis added).

Despite what appears to be helpful background evidence, the IJ devotes one sentence in his opinion summarizing these reports, as well as the various news articles submitted by Petitioner, concluding that they only "indicate that Moslem fundamentalists are seeking to overthrow the government of Egypt and establish a[n] Islamic fundamentalist government in Egypt."  The IJ also found it significant that none of the articles or

---

[6]In November of 1997, a group of Muslim extremists opened fire on Egyptians and tourists at the temple of Hachepsut in Luxor, Egypt.  Sixty people were killed, and twenty were wounded.  The attack was believed to be aimed at disrupting the tourist industry.

-10-

country condition reports refer to Petitioner or any of his family by name.  But, the correct use of country condition reports is to provide "a general description of conditions faced by Coptic Christians in Egypt."  El Moraghy, 331 F.3d at 204 (emphasis added).  Country condition reports need not refer to a petitioner by name to be probative.  See id.  ("It is unrealistic to expect that country condition reports could contain references to all citizens of that country who have faced . . . persecution" and "to demand that they do so . . . is clearly erroneous.").

        Here, there is simply an "absence of reasoned discussion" by the IJ of whether the country condition reports and articles sufficiently support Petitioner's claim that a "reasonable person" in Petitioner's shoes as a Coptic Christian living Egypt would fear returning to Egypt.  See id.  Therefore, we cannot determine if the IJ properly considered this evidence.  But because, as we discuss below, Petitioner has failed to establish a subjective fear of persecution, we need not consider whether the IJ's cursory review of this documentary evidence was in error.[7]  Cf. id. at 205 (remanding in light of misuse of country condition reports and the absence of key findings in IJ's discussion of both past persecution and fear of future persecution).

---

[7]We urge that in the future, an IJ should be more comprehensive in discussing his analysis of potentially relevant documentary evidence so that a reviewing court can evaluate whether such evidence was properly considered.  See El Moraghy, 331 F.3d at 204-05.

2.        Subjective Fear

To prove a well-founded fear of future persecution, Petitioner also must demonstrate a subjective fear of persecution. Velasquez, 316 F.3d at 58-59. Under this prong, Petitioner must prove that his fear is genuine. See Aguilar-Solis, 168 F.3d at 572. A crucial aspect in determining whether an applicant has a genuine fear is the applicant's credibility. See Mukamusoni, 390 F.3d at 125 (The BIA cannot, as a matter of law, question the "genuineness" of petitioner's fear without addressing credibility.).

We begin, yet again, with the fact that the IJ reasonably found Petitioner's testimony not credible. The IJ noted Petitioner's inability to explain why he returned to Egypt on three occasions despite his apparent fear of "imminent death" if he were to return there now. While returning to one's native country does not automatically refute the possibility of having a genuine fear, see, e.g., Mukamusoni, 319 F.3d at 126 (The petitioner's return to Rwanda to finish her education, when faced with "no viable means of support otherwise," did not undercut her claim as "people take risks in the face of their fears."), Petitioner's three trips to Egypt, all occurring after the alleged incidents of his persecution, significantly undercut his claim that he is now afraid to return. Petitioner's first return in 1993 was for twenty-three days, allegedly to renew his passport, which he could have done

(albeit more expensively) outside of Egypt.  His second return in 1995, for twenty-five days, was to renew his visa to stay in Greece.  His third, a trip for ten days in 1996, was to visit his mother.  In his defense, Petitioner claims that he was only able to return to Egypt on these occasions because he went back in secret and stayed at a different address from his family.  The reasons for these returns, however, and the length of the stays, support the IJ's determination that Petitioner does not have a subjective fear of returning to Egypt.  As such, any error that the IJ may have made in failing to provide a reasoned analysis of the country condition reports and articles is harmless, and the BIA's decision is affirmed.  See, e.g., Mekhoukh v. Ashcroft, 358 F.3d 118, 130 (1st Cir. 2004) (applying harmless error standard).[8]

The petition for judicial review is **DENIED**.

---

[8]Having found that Petitioner has failed to prevail on his asylum claim, we also must affirm the BIA's denial of withholding of removal.  The burden of proof required for Petitioner to succeed in a withholding of removal claim is that there is a "clear probability" of persecution, which is higher than the "well-founded fear" standard implicated by an asylum claim. See Mediouni v. INS, 314 F.3d 24, 27 (1st Cir. 2002).  Petitioner, therefore, cannot succeed on his claim of withholding of removal.