**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 2, 2005
Decided April 18, 2005

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. FRANK H. EASTERBROOK, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 03-4272

PANDELI PRIFTI,
    *Petitioner*,

    *v.*

ALBERTO GONZALES\*, Attorney
General of the United States,
    *Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals

No. A78-210-415

**O R D E R**

Albanian native Pandeli Prifti applied for asylum, withholding of removal, and relief under the Convention Against Torture, alleging that he faced political persecution because of his and his family's long history of involvement with the Democratic Party. An immigration judge found Prifti not credible and denied his petition, and the Board of Immigration Appeals summarily affirmed. Prifti now petitions for review of the BIA's decision. We deny the petition.

In an affidavit that he attached to his application, Prifti explained that in 1999 he was forced to flee Albania after being threatened by Socialist Party

---

\* Pursuant to Fed. R. App. P. 43(c), we have substituted Alberto Gonzales for John Ashcroft as the named respondent.

members to cease his "activities and support for the [D]emocratic party."  The most serious of these threats came in late November 1998, after Prifti and his friend, a fellow Democratic Party supporter, had been campaigning to "boycott[] the voting for the new constitution."  A few days after they finished campaigning, Prifti's friend was "assassinated" outside his home by "masked men," and Prifti's father received a phone call that Prifti would be killed as well.  Prifti subsequently "went into hiding" until he obtained a "bogus traveling document" that he used to enter the United States via Italy.

Prifti claims to be the third generation of his family persecuted by Albania's Socialist government.  He says that his grandfather and great uncle supported the armed anti-Socialist resistance until they were forced to flee Albania (Prifti specifies no dates) and seek political asylum in Greece.  Prifti stated that his "entire family" spent ten years–from 1946 until 1956–in labor camps across Albania for "political reasons."  Then, beginning in 1976, Prifti's father spent eight years in jail as a political prisoner.  Years later, family members continued to be badly mistreated; Prifti stated that in 1999 his sister was "attacked, beaten and raped for our family's involvement in the Democratic Party," which he says led to her being granted asylum in the United States in 2000.

Prifti pinpointed his own trouble with the Socialist government as beginning in 1991, when he was arrested, held and "tortured" for 24 hours as a result of demonstrating against the government.  When the Democratic Party came to power in 1992, Prifti began "spreading the democratic word among the Albanians," and he stated that he became a "full member of the Democratic Party" in 1996.  At the end of 1996, however, Prifti claims that he "encountered problem[s]" with Socialist supporters while campaigning for a local election on behalf of the Democratic Party's Youth Forum.  Shortly thereafter, in 1997, his family's coffee shop, known as the "Democratic Café," was looted and destroyed.  It was following these events that Prifti's campaign friend was killed and Prifti went into hiding before leaving the country in early 1999.

In 2001, Prifti filed an amended affidavit in which he expanded on the information he gave in his application.  He elaborated on his 1991 arrest, specifying that he was beaten by police.  He also introduced new details about the detention that followed; he stated that while he was detained in his cell, a police officer "cut me in my stomach" and "burned my shoulder."  Prifti added that he was taken to a hospital to have his injuries treated.  To corroborate this account, Prifti provided a medical certificate prepared in 2000 by his family doctor in Albania, stating that nine years earlier Prifti underwent an operation for "big strikes" on his stomach caused by "strong tools."  Prifti claimed that his doctor issued this certificate based on his review of earlier hospital reports (not in the record).  Prifti also presented medical reports from Elmhurst Clinic and Cook County Hospital prepared in 2000

and 2001, respectively, stating that he had scars consistent with knife and burn injuries.

In his amended affidavit, Prifti also for the first time described an incident that occurred in 1997 in which he was beaten by police officers while trying to vote in the "general election." Following this beating, Prifti claims that he was taken by police officers to the police station, where he watched them tear up his identification and voting cards.

Prifti subsequently had a hearing before an IJ, who denied relief. Citing discrepancies between Prifti's original affidavit, amended affidavit, and his testimony, the IJ found Prifti not credible. Specifically, the IJ was troubled by Prifti's failure to mention in his original application that he was stabbed and burned while in jail in 1991 and that he had been arrested for attempting to vote in 1997. The IJ also found incredible Prifti's explanation for different dates he gave regarding the year in which he officially joined the Democratic Party. The Board of Immigration Appeals summarily affirmed.

Because the BIA summarily affirmed the IJ's decision, we evaluate the IJ's findings as if they were the BIA's. *Georgis v. Ashcroft*, 328 F.3d 962, 966-67 (7th Cir. 2003). We will uphold an IJ's adverse credibility determination if it is supported by "reasonable, substantial, and probative evidence on the record considered as a whole." *Prela v. Ashcroft,* 394 F.3d 515, 518 (7th Cir. 2005) (quoting *INS v. Elias-Zacarias, 502 U.S. 478, 481* (1992)). We will reverse only if we determine that the evidence "compels a different result" and that no reasonable factfinder could reach the same conclusion. *Id.* at 518; *Krouchevski v. Ashcroft*, 344 F.3d 670, 673 (7th Cir. 2003).

On appeal Prifti challenges the IJ's finding that his testimony was not credible. He argues that the IJ erred in discrediting his explanation of the stab and burn wounds he received while in custody in 1991, and he supports his argument by pointing to reports from physicians at Cook County Hospital and Elmhurst Clinic confirming that his scars were consistent with knife and burn injuries. Prifti also disputes the significance of purported discrepancies identified by the IJ in dates when he joined the Democratic Party and in the degree to which his national identification booklet was said to be "torn apart."

Substantial deference will be given to an IJ's adverse credibility finding provided that the IJ supported her credibility determination with "specific, cogent reasons" that "bear a legitimate nexus to the finding." *Lin v. Ashcroft*, 385 F.3d 748, 751 (7th Cir. 2004) (citations omitted). A credibility finding should be overturned only where "extraordinary circumstances" warrant a reversal, and not simply where substantial evidence could support an alternate finding. *Capric v. Ashcroft*, 355 F.3d 1075, 1086-87 (7th Cir. 2004). Careful review is especially

important because an adverse credibility determination in essence "doom[s]" an alien's asylum claim.  *Uwase v. Ashcroft*, 349 F.3d 1039, 1041 (7th Cir. 2003).

The IJ here properly discredited Prifti's explanation in his amended affidavit that he received stab and burn wounds while in custody in 1991.  The IJ noted that the details of Prifti's attack comprised a "crucial aspect[]" of his asylum claim that he failed to mention in his original affidavit.  An IJ is entitled to view new factual assertions as "evidence that the applicant is not a truthful and reliable witness." *Oforji v. Ashcroft*, 354 F.3d 609, 614 (7th Cir. 2003).  While minor inconsistencies will not support an adverse credibility finding, inconsistencies that go to the heart of an asylum claim will.  *Capric,* 355 F.3d at 1090.  Furthermore, although Prifti insists that the submitted medical reports prepared by Chicago area doctors nine and ten years after the date of his injuries corroborate his claim, the IJ was not obliged to credit those reports, given the extended passage of time since the injuries and the absence in the record of any other medical documentation more contemporaneous with the injuries.  *See Diab v. Ashcroft*, 397 F.3d 35, 40 (1st Cir. 2005) (finding that petitioner did not prove past persecution in part because, although he submitted a report prepared by a doctor in the United States nine years after his attack, he failed to submit any contemporaneous medical records from his attack or alleged hospital stay).  Similarly, to the extent Prifti might suggest that the IJ should have credited the report of his Albanian doctor nine years after the attack, we note that Prifti never introduced copies of the purportedly contemporaneous records upon which that doctor based his opinion.  And even if we assume these reports corroborate Prifti's claim that he suffered knife wounds and burns, they do not establish that he was stabbed and burned in the manner in which he claims.  Given the significant inconsistencies in Prifti's evidence, the limited probativeness of his post-dated medical records, and the deference that we accord an IJ's credibility finding, we cannot say that the IJ was wrong to disbelieve Prifti's account of his attack in detention.

We acknowledge that the IJ's discussion is less persuasive in regard to the inconsistencies surrounding the date when Prifti joined the Democratic Party and the degree to which his national identification booklet was torn.  However, these are only minor discrepancies and did not serve as the primary basis upon which the IJ made his adverse credibility finding.  We therefore DENY the petition.