**Not For Publication in West's Federal Reporter
Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals

## For the First Circuit

No. 04-2395

CLAUDIA ELENA ORREGO-QUIROZ,

Petitioner,

v.

JOHN ASHCROFT, ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Boudin, Chief Judge,
Torruella, Circuit Judge,
and Stahl, Senior Circuit Judge.

William P. Joyce, with whom Joyce & Zerola, P.C. was on brief,
for petitioner.
Annemarie E. Roll, Attorney, Office of Immigration Litigation,
Civil Division, with whom Peter D. Keisler, Assistant Attorney
General, Civil Division, and Linda S. Wernery, Senior Litigation
Counsel, Office of Immigration Litigation, were on brief, for
respondent.

June 30, 2005

**Per Curiam**.  Petitioner Claudia Elena Orrego-Quiroz ("Petitioner") seeks review of a final order of removal issued by the Board of Immigration Appeals ("BIA"), which affirmed, without opinion, the decision of the Immigration Judge ("IJ") denying Petitioner's applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").[1]

## I.  BACKGROUND

Petitioner, a native and citizen of Columbia, entered the United States illegally on June 26, 2002.  The Immigration and Naturalization Service (INS)[2] issued a Notice to Appear on June 28, 2002, charging her with removability pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled.  Petitioner conceded removability, but sought relief from removal in the form of asylum, withholding of removal, and withholding of removal under the CAT, on the ground that she feared persecution on the basis of imputed political affiliation and membership in a particular social group.

---

[1]The United Nations Convention Against Torture and Other Forms of Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, was implemented in the United States by the Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. No. 105-277, § 2242, 112 Stat. 2681-822 (codified at 8 U.S.C. § 1231).

[2]The Homeland Security Act of 2002, Pub. L. No. 107-296, § 471, 116 Stat. 2135, 2205 (codified as amended at 6 U.S.C. § 291(a)), abolished the INS and transferred its duties to the Department of Homeland Security.

Petitioner testified at her hearing before the IJ that she had fled Colombia because she had suffered persecution, and feared future persecution, resulting from her affiliation with a youth organization called Urban Central Communal Action ("Communal Action Group"), a group that provides poor communities with food, household items, and educational programs. Petitioner testified that in order to carry out their mission, the Communal Action Group had to "pay the politicians for their help" and that their activities were financed by politicians. She further testified that although she and the Communal Action Group did not work for the government, a terrorist group called the Revolutionary Armed Forces of Colombia ("FARC") believes the Communal Action Members are helping the Colombian government, and thus targets them for persecution on the basis of imputed political affiliation.

The incidents of alleged persecution against Petitioner in Colombia consist of threatening phone calls and letters, and three discrete additional incidents. The first incident involved FARC members shooting at the Communal Action Group while they were attempting to carry out one of their charity missions. During this attack, members of FARC shot at Petitioner and her group and wounded the father of her son and two others. The second attack occurred when she and other members of her group were traveling to a town when FARC members ordered them out of their cars at gunpoint, and proceeded to burn their vehicles with ignited

-3-

gasoline. In the last incident, Petitioner claims that a man threatened her and demanded that she contribute a million pesos to FARC. Petitioner left Colombia soon thereafter. After Petitioner left Colombia, the owners of the taxi she used to drive were attacked, with one of the two being killed. Petitioner claims it is likely that she was the target of this attack.

The IJ found that Petitioner did not establish past persecution, or a well-founded fear of future persecution, because she was not a credible witness, and, even if Petitioner were credible, that she had failed to establish a nexus between the persecution and a protected ground. The IJ then went on to conclude that Petitioner also had failed to satisfy her burden for withholding of removal and protection under the CAT. Finding that the IJ's credibility determinations are supported by substantial evidence, we deny Petitioner's petition for review.[3]

## II. DISCUSSION

While this case involves judicial review of a decision by the BIA, when the BIA summarily affirms the opinion of the IJ, we review the IJ's analysis. Diab v. Ashcroft, 397 F.3d 35, 39 (1st Cir. 2005). The BIA's decision will be upheld if it is "supported by reasonable, substantial and probative evidence on the record

---

[3]We need not decide, and thus express no opinion on, the issue of whether there is a nexus between the alleged acts of persecution against Petitioner on one of the five protected grounds that serve as a basis for asylum.

-4-

considered as a whole." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). We will overturn a decision of the BIA "only when the record evidence would compel a reasonable factfinder to make a contrary determination." Aguilar-Solis v. INS, 168 F.3d 565, 569 (1st Cir. 1999) (citing Elias-Zacarias, 502 U.S. at 481 & n.1).

**A.      Asylum**

In order to establish eligibility for asylum, Petitioner bears the burden to show that she is a "refugee" under 8 U.S.C. § 1158(b)(1), meaning that she is "unable or unwilling to return to . . . [Colombia] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Petitioner can "meet this burden in one of two ways: (1) by demonstrating a well-founded fear of persecution on account of one of the statutory grounds, or (2) by establishing past persecution on one of the statutory grounds so as to be entitled to a presumption of a well-founded fear of persecution." Mukamusoni v. Ashcroft, 390 F.3d 110, 119 (1st Cir. 2004).

Here, Petitioner relies primarily upon her affidavit and her testimony to support her claim for asylum.[4] Although an asylum

---

[4]Petitioner also provided the IJ with a copy of her brother's death certificate from 1988 (to corroborate her story that her brother had been murdered, and that his murder inspired her to join the Community Action Group, following in her brother's footsteps of doing something for the greater good), a letter from the Assembly of Urban Central Communal Action stating, without evidence or example, that Petitioner had received multiple threats from armed

applicant's testimony "may be sufficient to sustain the burden of proof without corroboration," such testimony must be credible. Settenda v. Ashcroft, 377 F.3d 89, 93 (1st Cir. 2004) (quoting 8 C.F.R. 1208.13(a)) (internal quotation marks omitted). The IJ found Petitioner not to be a credible witness, stating that Petitioner was "evasive and wholly lacking in credibility in certain crucial parts of her testimony." The IJ also found that her testimony was internally inconsistent and contradicted parts of the affidavit she submitted in support of her asylum application. The IJ identified three particular inconsistencies: (1) discrepancies about her places of residence in Colombia; (2) inconsistency between her affidavit which states that she last saw/heard from the father of her child in the hospital after he was injured in the FARC attack, and her hearing testimony, which stated that after he was released from the hospital their "relationship began to deteriorate;" and (3) inconsistency between her affidavit which says that both the husband and wife taxi owners were "brutally massacred" and her testimony, which states that only the husband was killed, and the wife was merely injured. And, even though the Petitioner attempts to explain away each inconsistency, looking at all of the inconsistencies as a whole, coupled with the

---

rebel groups, and several pieces of evidence irrelevant to this appeal. The record also includes a U.S. Department of Justice country condition report for Colombia dated March 31, 2003, which provides some background information on the guerilla activities of the FARC.

IJ's determination that Petitioner was evasive in her responses, the IJ's determination that Petitioner has failed to establish her eligibility for asylum is well-supported. Further, the limited documentary evidence provided by Petitioner does not compel that we disregard the adverse credibility findings of the IJ. Petitioner has failed to meet her burden to establish eligibility for asylum.

**B.      Withholding of Removal**

To establish eligibility for withholding of removal, Petitioner has to prove that, "upon deportation, [s]he [was] <u>more likely than not</u> to face persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." <u>Salazar</u> v. <u>Ashcroft</u>, 359 F.3d 45, 52 (1st Cir. 2004) (emphasis in original). As this is a more stringent standard than that required to establish eligibility for asylum, a burden Petitioner has failed to meet, Petitioner necessarily fails to meet her burden to establish eligibility for withholding of removal.

**C.      CAT**

Lastly, Petitioner seeks protection under the CAT. To seek relief under the CAT, an applicant must "establish that it is <u>more likely than not</u> that he or she would be tortured if removed to [Colombia]." 8 C.F.R. § 208.16(c)(2) (emphasis added). "For an act to constitute torture it must be: (1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for a proscribed purpose; (4) by or at the instigation of or

-7-

with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions." Elien v. Ashcroft, 364 F.3d 392, 398 (1st Cir. 2004) (quotation omitted). Petitioner makes no argument to this Court that she is more like than not to be tortured upon her return to Colombia, and, fails to even address the requirement that to be protected under the CAT, any alleged torture must be "with the consent or acquiescence of a <u>public official who has custody or physical control of the victim</u>." Id.; see, e.g., Smilow v. Southwestern Bell Mobile Sys., Inc., 323 F.3d 32, 43 (1st Cir. 2003) ("Issues raised on appeal in a perfunctory manner (or not at all) are waived.").

## III. CONCLUSION

For the above-mentioned reasons, the petition for review is **DENIED**.