**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 04-2229

ELIDIO MARIO DE LEON; INGRID K. DE LEON,
Petitioners,

v.

ALBERTO R. GONZALES, ATTORNEY GENERAL OF THE UNITED STATES,
Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Boudin, Chief Judge,
Siler,[*] Senior Circuit Judge,
and Saris,[**] District Judge.

Illana Etkin Greenstein, with whom Harvey Kaplan, Maureen O'Sullivan, and Jeremiah Friedman, Kaplan, O'Sullivan & Friedman, were on brief for petitioners.

Peter D. Keisler, Assistant Attorney General, Civil Division, with whom Terri J. Scadron, Assistant Director, Office of Immigration Litigation, and Anthony W. Norwood, Counsel to the Assistant Attorney General, were on brief for respondent.

November 3, 2005

---

[*]Of the Sixth Circuit Court of Appeals, sitting by designation.

[**]Of the District of Massachusetts, sitting by designation.

**SILER, <u>Senior Circuit Judge</u>**.  Petitioners Elidio De Leon ("De Leon") and his wife, Ingrid De Leon, seek review of a final order of the Board of Immigration Appeals ("BIA") which affirmed, without opinion, the immigration judge's ("IJ") denial of De Leon's applications for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT").[1]  We **AFFIRM**.

## I.  BACKGROUND

De Leon filed his first asylum application in 1991 and a second one in 1994.  Although De Leon acknowledged that the account in his 1991 application was different from his testimony before the IJ, he did not explain why the stories were different.[2]  In June 2000, the Immigration and Naturalization Service's[3] ("INS") asylum office contacted De Leon for an interview in connection with his 1994 asylum application.  During the interview, De Leon recounted that he was drafted into the Guatemalan army in 1989 and trained to fight and kill guerillas.  In his 1994 application, De Leon declared that he was drafted before he turned sixteen years old

---

[1]Ingrid De Leon is a derivative asylum applicant based on the claim of her husband.  <u>See</u> 8 U.S.C. § 1158(b)(3)(A) (2000).

[2]De Leon's 1991 asylum application was apparently lost.  Its presence or absence is irrelevant, however, because De Leon conceded that its contents differed from his testimony.

[3]In March 2003, "the relevant functions of the Immigration and Naturalization Service [] were reorganized and transferred into the new Department of Homeland Security."  <u>Romilus</u> v. <u>Ashcroft</u>, 385 F.3d 1, 2 n.1 (1st Cir. 2004).

and, while following his superiors' orders, "persecute[d] and attack[ed] guerilla strongholds. And in combat [he] might of killed people but [he] was following orders." Upon his discharge, De Leon claimed that the residents of his hometown threatened, beat, and tortured him and his whole family.

De Leon stated that he deserted the army in 1990 after he was given a twelve-hour pass to visit his mother. De Leon fled Guatemala, but the interviewer noted that "[s]ince [De Leon's] departure [he] has kept in touch with his mother and other family members, none of whom have ever been harmed or threatened by anyone." Conversely, the 1994 application related that De Leon was given twenty-four hours to leave Guatemala.

In June 2000, the INS commenced removal proceedings against De Leon. See 8 U.S.C. § 1182(a)(6)(A)(i) (2000). In the proceedings before the IJ, De Leon renewed his application for asylum and applied for withholding of removal and CAT protection. De Leon testified that, rather than being drafted, the army kidnapped him when he was sixteen years old. Once in the army, De Leon claimed he was beaten daily, fed once per day, and a sergeant raped him at gunpoint. Thereafter, De Leon and other recruits were sent on a mission to kidnap guerilla sympathizers. De Leon wanted no part in the plot, so he fled into the jungle. He returned to Guatemala City and, with assistance from a paid smuggler, went to Massachusetts to live with his brother.

-3-

The IJ found De Leon removable and denied his applications. The IJ observed that De Leon gave "several different stories as to what happened to him during his time in Guatemala and the reasons why he is or claims to be fearful of returning [there]," his testimony and his 1994 application were "entirely different," and his testimony "was inconsistent in many ways with [his] written affidavit, which he offered in support of his application." Thus, De Leon failed to meet his burden of proof regarding either past persecution or a well-founded fear of future persecution. Since De Leon's asylum application was denied, he necessarily could not meet the more demanding withholding of removal hurdle or his CAT burden.

The BIA affirmed the IJ's decision without opinion. See 8 C.F.R. § 1003.1(e)(4). This appeal followed. We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1) and 28 U.S.C. § 158.

## II. DISCUSSION

Because the BIA summarily affirmed the IJ's opinion, we review the IJ's decision as the final order. See Galicia v. Ashcroft, 396 F.3d 446, 447 (1st Cir. 2005) (citing Albathani v. INS, 318 F.3d 365, 373 (1st Cir. 2003)). The IJ's findings of fact and conclusions of law are treated as if they were made by the BIA. See Keo v. Ashcroft, 341 F.3d 57, 60 (1st Cir. 2003). The IJ's decision must be "supported by reasonable, substantial, and probative evidence on the record considered as a whole." See Keo, 341 F.3d at 60. "This standard of review is quite deferential[,]"

-4-

Guzman v. INS, 327 F.3d 11, 15 (1st Cir. 2003), and "the IJ's determination must stand unless we 'find that the evidence not only *supports* [De Leon's] conclusion, but *compels* it.'" Keo, 341 F.3d at 60 (citations omitted).

De Leon argues that the IJ erred in denying his applications for asylum and withholding of removal. See 8 C.F.R. § 1208.3(b). "As a prerequisite to establishing eligibility for asylum, [De Leon] must establish that he is a refugee, as set forth in . . . 8 U.S.C. § 1158(b)." Samayoa Cabrera v. Ashcroft, 367 F.3d 10, 13 (1st Cir. 2004). To qualify as a refugee, De Leon must "demonstrat[e] a well-founded fear of future persecution on the basis of one of five statutory factors: race, religion, nationality, membership in a particular social group, or political opinion." Keo, 341 F.3d at 60. De Leon must prove that his "fear is both genuine and objectively reasonable" to satisfy this burden. See id. His "well-founded fear of future persecution" has both subjective and objective components. Aguilar-Solis v. INS, 168 F.3d 565, 572 (1st Cir. 1999). As for the objective prong, De Leon "must prove that 'a reasonable person . . . would fear persecution on account of'" one of the enumerated factors. See Diab v. Ashcroft, 397 F.3d 35, 41 (1st Cir. 2005) (citation omitted). As for the subjective prong, De Leon must prove that his fear is genuine – "[a] crucial aspect in determining whether an applicant has a genuine fear is the applicant's credibility." Id.

De Leon contends that he suffered past persecution and has a well-founded fear of future persecution on account of his actual or imputed political opinion and his membership in a particular social group. Regarding the former, De Leon fears that the army will persecute him if he returns to Guatemala because he is a deserter. Regarding the latter, De Leon claims he is included in a group of children who have been forcibly recruited into the army.

We refuse to disturb the IJ's credibility findings because De Leon has neither established past persecution nor a well-founded fear of future persecution. When a hearing officer who sees and hears a witness "makes an adverse credibility determination and supports it with specific findings, an appellate court ordinarily should accord it significant respect." Aguilar-Solis, 168 F.3d at 570. The IJ found that his credibility was so impaired that he failed to demonstrate any past persecution and he "lacked the specificity required to establish the requisite nexus between the [Guatemalan army's] alleged acts and one of the five statutorily protected grounds." Id. His accounts of persecution cannot be reconciled. The IJ found that De Leon's 1994 version of events differed from his testimony and he failed to explain these discrepancies. He gave markedly conflicting accounts as to how he entered the army and fled Guatemala. Although he originally claimed he was drafted, "might of killed people," and upon his discharge the townspeople threatened, beat, and tortured him and

his family, he later claimed that he was kidnapped by the army, tortured, raped, forced to take part in a kidnap mission, and escaped from his captors. Further complicating De Leon's renditions is his account to the asylum officer that he fled Guatemala after receiving a twelve-hour pass to visit his mother.

De Leon's lack of credibility doomed any claim of past persecution. See Laurent v. Ashcroft, 359 F.3d 59, 64 (1st Cir. 2004). Nor has he made a case for a well-founded fear of future persecution, since renditions of his past persecution varied substantially. See Diab, 397 F.3d at 41-42.[4]

Further, De Leon must "establish that he was persecuted on one of the five statutory grounds." See Samayoa Cabrera, 367 F.3d at 13. Although De Leon insists that he will be subjected to persecution upon his return to Guatemala as a member of a particular social group, he can neither prove nor establish that he "belonged to or was affiliated with any organized social group[]" or that "young men in general have reason to fear persecution in Guatemala." See Rodriguez-Ramirez, 398 F.3d 120, 125 n.3 (1st Cir.

---

[4]This court recently observed that "the political situation in Guatemala has changed dramatically" in recent years. See Rodriguez-Ramirez v. Ashcroft, 398 F.3d 120, 126 (1st Cir. 2005). "Peace accords were signed in 1996 between the Guatemalan government and the insurgent forces, who had rallied collectively under the banner of the Guatemalan National Revolutionary Unity (GNRU). These accords put an end to the country's civil war." Id. Since De Leon left Guatemala in 1990, the civil war is long over and he should have no fear of persecution upon his return. See Guzman, 327 F.3d at 16.

2005).  We likewise reject De Leon's claim that he will be persecuted for his desertion from the army because of the IJ's adverse credibility finding.

Because De Leon's evidence does not compel a different conclusion, we affirm the denial of his asylum application. Further, "[b]ecause [De Leon] is unable to satisfy the less stringent standard for asylum, [he] is *a fortiori* unable to satisfy the test for withholding of deportation."  Toure v. Ashcroft, 400 F.3d 44, 49 (1st Cir. 2005) (per curiam) (citing Albathani, 318 F.3d at 374).

Additionally, substantial evidence supports the IJ's finding that De Leon failed to meet his CAT burden.  The IJ's adverse credibility determination, which De Leon failed to refute, undermines his CAT claim; therefore, this claim fails.  See Sharari v. Gonzales, 407 F.3d 467, 475-76 (1st Cir. 2005).  De Leon's failure to admit any torture until his testimony before the IJ invalidates and casts serious doubts upon his prior applications. Also, improved conditions in Guatemala negate any likelihood of torture upon De Leon's return.  See id.; Rodriguez-Ramirez, 398 F.3d at 125.

We AFFIRM the decision of the BIA.