**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

————————————

No. 05-1337

BUDI IRAWAN,

Petitioner,

v.

ALBERTO GONZALES,
Attorney General of the United States,

Respondent.

————————————

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

————————————

Before

Lynch and Howard, <u>Circuit Judges</u>,
and Restani,<sup>*</sup> <u>Judge</u>.

————————————

<u>Haian Lin</u> on brief for petitioner.
<u>Robbin K. Blaya</u>, Attorney, Office of Immigration Litigation,
<u>Peter Keisler</u>, Assistant Attorney General, Civil Division, and
<u>Terri J. Scadron</u>, Assistant Director, on brief for respondent.

————————————

November 21, 2005

————————————

————

<sup>*</sup> Chief Judge of the United States Court of International
Trade, sitting by designation.

**Per Curiam.**  Petitioner, Budi Irawan, is a twenty-seven-year-old citizen of Banyuwangi, Indonesia, who entered the United States on February 4, 2001, as a non-immigrant visitor for pleasure.  He remained in the United States after his visa expired on August 3, 2001, and was detained by the Immigration and Naturalization Service, now part of the Department of Homeland Security, on June 20, 2002, for violating 8 U.S.C. § 1227(a)(1)(B) (West Supp. 2004).  Prior to his removal hearing, the Petitioner conceded that he was subject to removal, and the Immigration Judge ("IJ") ordered his return to Indonesia.  The Board of Immigration Appeals ("BIA") adopted the IJ's opinion, in which the IJ found that omissions and inconsistencies in Petitioner's testimony rendered incredible his claim that he would face an objective threat of persecution or torture justifying withholding of removal.

Petitioner appeals the BIA's dismissal of his application for asylum under 8 U.S.C. § 1158 (2000), withholding of removal under 8 U.S.C. § 1231(b)(3) (2000), and withholding of removal under the Convention Against Torture (the "Convention").[1]  We affirm the judgment of the BIA.

## I.

Because the BIA adopted the IJ's decision, we review the

---

[1]The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, was implemented by the Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. 105-277, 112 Stat. 2681 (codified at 8 U.S.C. 1231 (2000)).

-2-

IJ's decision as the BIA's final decision. <u>Hernandez-Barrera v. Ashcroft</u>, 373 F.3d 9, 20 (1st Cir. 2004). The factual determinations of the BIA's adopted decision may be overturned only if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B) (2000). Legal determinations of the BIA are reviewed de novo, but with some deference to the BIA's interpretation of the INA. <u>Da Silva v. Ashcroft</u>, 394 F.3d 1, 5 (1st Cir. 2005).

## II.

Absent changed or extraordinary circumstances, a foreign national may not apply for asylum more than one year after arriving in the United States. 8 U.S.C. § 1158(a)(2)(B). Petitioner concedes that he did not file a claim for asylum within one year after his arrival in the United States. The IJ advised Petitioner that his application for asylum would not be accepted without a special motion showing why he failed to apply within one year of his arrival. The IJ found that no such motion was filed, and therefore dismissed Petitioner's application. 8 U.S.C. § 1158(a)(3) provides that "[n]o court shall have jurisdiction to review any determination of the Attorney General under paragraph [(a)](2)," which includes the IJ's determination regarding the timeliness of Petitioner's asylum application and the existence of changed or extraordinary circumstances justifying waiver of the one-year time limitation. We lack jurisdiction to review this

determination and therefore do not consider Petitioner's claim for asylum under 8 U.S.C. § 1158. <u>Sharari v. Gonzales</u>, 407 F.3d 467, 473 (1st Cir. 2005).

## III.

An otherwise removable non-citizen may avoid removal to a country by showing that it is more likely than not that his "life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The non-citizen has the burden of persuasion to "show either that (i) he has suffered past persecution on account of one of the five protected grounds (thus creating a rebuttable presumption that he may suffer future persecution), or (ii) it is more likely than not that he will be persecuted on account of a protected ground upon his return to his native land." <u>Da Silva</u>, 394 F.3d at 4; <u>see</u> 8 C.F.R. § 208.16(b) (2005).

Petitioner claims he is the victim of past persecution in the form of harassment of himself and the murder of two family members. Specifically, he alleges that he and his deceased relatives were identified as "dukun santets" (a type of mystic or sorcerer) in their home area of Banyuwangi and marked for death. Petitioner claims that his grandfather was murdered in Banyuwangi in January 2000, and that his cousin was also murdered there shortly after Petitioner arrived in the United States.

-4-

In support of his application Petitioner submitted as exhibits three news articles describing a wave of violence against dukun santets in East Java and particularly Banyuwangi between February and October of 1998, resulting in the reported deaths of 143 people. According to Petitioner's oral testimony, in or around November 1999, Petitioner and his family became aware that people in the area surrounding Banyuwangi suspected Petitioner's grandfather of being a dukun santet. Shortly thereafter, Petitioner "managed to flee my grandfather out of town" by taking him from Banyuwangi to the city of Jember, which is also located in East Java. For an unstated reason, Petitioner claimed that "the effort failed and they still wanted my grandfather." Petitioner claims he returned his grandfather to Banyuwangi. Petitioner claims that after returning to Banyuwangi, he witnessed a mob beat and kill his grandfather on January 14, 2000.

Petitioner claims that shortly thereafter he relocated to another town for an undisclosed period of time, but eventually returned to Banyuwangi. Upon his return, Petitioner states that he was attacked and sustained injuries requiring hospitalization. Petitioner then fled to Jakarta in April 2000. Finally, Petitioner claimed in oral testimony that his cousin was killed as a suspected dukun santet approximately one month after Petitioner left for the United States.

While a petitioner's testimony alone may be enough to

establish a right to withholding under certain circumstances, 8 C.F.R. § 208.16(b), testimony that is vague and inconsistent does not support a claim for asylum or withholding. See Diab v. Ashcroft, 397 F.3d 35, 40 (1st Cir. 2005).

The IJ exposed a number of vague or inconsistent points in Petitioner's testimony. First and foremost, Petitioner could provide no clear reason why he decided to return his grandfather to Banyuwangi in 2000. The IJ also noted other discrepancies between Petitioner's application and his oral testimony that undermined his credibility. For example, Petitioner's application states that his family lives in Jakarta, but at his hearing, Petitioner insisted that they live in Banyuwangi.[2] Petitioner's application claims that his brother was murdered shortly after Petitioner escaped to the United States, but in his oral testimony he denied having a brother and claimed that his cousin was murdered instead. Although minor inconsistencies in an application do not necessarily undermine a petitioner's credibility, see Chebchoub v. INS, 257 F.3d 1038, 1043 (9th Cir. 2001), the composition and location of the Petitioner's family is particularly important because Petitioner's claim for withholding hinges on the details surrounding the alleged mistreatment of his family members.

---

[2]Petitioner's application for asylum actually lists his parents as living in "Barhuwamgi," Indonesia, his written statement claims that "all my family go to the Jakarta City to looking for peacefully and safety."

Petitioner failed to provide a convincing explanation for these discrepancies, and we cannot conclude that the record compels a decision different from that of the IJ.

The record also demonstrates that Petitioner's claimed threat of persecution is confined to only part of Indonesia. If a non-resident can relocate without a probability of persecution, withholding should be denied. 8 C.F.R. § 208.16(b)(3). Petitioner admits that he worked outside of Banyuwangi as a carpenter from July of 1999 to July of 2000 without incident. Petitioner also admits that he resided in Jakarta without incident from December 2000 to January 2001. The IJ found sufficient evidence to conclude that Petitioner would not be subject to persecution in Jakarta and other areas of Indonesia where he has stayed in the past. The evidence on the record does not compel otherwise. Accordingly, we have no reason to overturn the determination of the IJ adopted by the BIA and deny Petitioner's request for withholding under 8 U.S.C. § 1231(b)(3).

**IV.**

In order to satisfy the requirements of the Convention, the Petitioner bears the burden of showing that he will be tortured if returned to Indonesia. See 8 C.F.R. § 208.16(c)(2). As with withholding and asylum, "[t]he testimony of the [petitioner], if credible, may be sufficient to sustain the burden of proof without corroboration." Id.

A petitioner must show five elements to qualify for withholding under the Convention. Petitioner must show that, more likely than not, he will be subjected to "(1) an act causing severe physical or mental pain and suffering; (2) intentionally inflicted; (3) for a proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions." Settenda v. Ashcroft, 377 F.3d 89, 94 (1st Cir. 2004), quoting Elien v. Ashcroft, 364 F.3d 392, 398 (1st Cir. 2004).

In addition to the fact that Petitioner has failed to show a likelihood that he will suffer severe physical or mental pain and suffering, Petitioner's claim under the Convention fails because he was not, nor is he likely to be, harmed through the actions or acquiescence of a public official. According to the Petitioner, local villagers threatened him and murdered his family members. There is no evidence on the record compelling the conclusion that the state authorized or participated in these activities. In fact, the IJ specifically found that the Petitioner's own evidence demonstrated that the Indonesian government had intervened to stop such attacks in 1998, over a year prior to the alleged death of Petitioner's grandfather. Petitioner did testify that the local police failed to issue a death certificate for his grandfather's murder; however, there is no

-8-

evidence that the Indonesian authorities were aware of any planned violence against Petitioner's grandfather prior to the attacks and failed to perform their lawful duty to prevent such attacks.  We therefore uphold the BIA's adopted determination and deny Petitioner withholding under the Convention.

## V.

The record does not compel any conclusion different from the BIA's adopted findings in this case.  Petitioner's claim of past persecution is both vague and inconsistent.  Petitioner's own testimony establishes that he does not face a threat of persecution everywhere in Indonesia.  Moreover, any claim for withholding under the Convention fails because Petitioner has not demonstrated that the state would promote or acquiesce in the torture of Petitioner upon his return to Indonesia.

Thus, the petition for review is DENIED.