# United States Court of Appeals
## For the First Circuit

No. 03-1258

SHOLA D. AKINWANDE,

Petitioner,

v.

JOHN ASHCROFT, Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Selya, Lynch, and Lipez, <u>Circuit Judges</u>.

<u>Randy Olen</u> for petitioner.

<u>Thankful T. Vanderstar</u>, Attorney, Office of Immigration Litigation, with whom <u>Linda S. Wernery</u>, Senior Litigation Counsel, Office of Immigration Litigation, and <u>Peter D. Keisler</u>, Assistant Attorney General, Civil Division, were on brief, for respondent.

August 17, 2004

**LYNCH**, __Circuit Judge__.  Shola Akinwande, of Nigeria, seeks review of the Board of Immigration Appeals' affirmance of an immigration judge's denial of his applications for adjustment of status and voluntary departure.  The core of Akinwande's argument involves an issue of law about the conduct of the deportation proceedings.  Specifically, Akinwande argues, under both the Due Process Clause and INS regulation 8 C.F.R. § 1003.25, that the IJ erred in permitting a witness, Akinwande's second ex-wife, to testify via telephone.  Akinwande's other arguments on appeal each depend in large part on that alleged error of law.  As best we can tell, this is the first case to address this argument involving the interpretation of 8 C.F.R. § 1003.25.  We hold that there was no error in the admission of the telephone testimony of the witness and that Akinwande's other arguments fail.  Accordingly, we affirm the denials of adjustment of status and voluntary departure.

**I.**

Akinwande entered the United States on June 26, 1994 as a visitor for pleasure.  He remained here longer than his authorized stay, and the INS commenced deportation proceedings against him on October 18, 1995.  He initially applied for asylum, withholding of removal, and, in the alternative, voluntary departure.

Then, on September 10, 1997, he married his third wife, Kenke, who is an American citizen.  On September 29, 1997, Kenke

-2-

filed a visa petition on his behalf. Following the approval of that petition, Akinwande withdrew his applications for asylum and withholding of removal and instead applied for adjustment of status based on the approved petition. This application did not stop the deportation proceedings, which took place in Boston.

Shelly Nichols, Akinwande's second ex-wife, and Akinwande himself were among the witnesses who testified during the hearings. Nichols, who lived in Colorado at the time of the hearings, testified by telephone. Her testimony contradicted Akinwande's version of facts and events in highly material ways. In addition, the INS submitted a letter from Nichols that contains numerous allegations against Akinwande, and most significantly, expresses Nichols' belief that Akinwande married her in order to seek immigration benefits. The INS also submitted a forensic report that concluded that some of the documents submitted by Akinwande had been altered.

## II.

We summarize the findings of the IJ, which were affirmed without opinion by the BIA, before discussing Akinwande's challenge. In short form, the IJ found, based largely on the telephone testimony of Akinwande's second ex-wife, Shelly Nichols, that Akinwande had entered into a prior fraudulent marriage with Nichols. This meant, as the IJ determined, that Akinwande was not eligible for adjustment of status.

The IJ found Nichols' testimony credible, noting that she was calm and gave detailed and consistent answers. Among other things, Nichols testified that Akinwande began to propose marriage to her a week or two after they met and that he did not disclose to her that he had been previously married and had children. She explained that she learned of his previous marriage when she accidentally discovered a folder of documents hidden beneath the carpet in Akinwande's apartment. In addition to Akinwande's marriage certificate from his previous marriage, the folder included a pamphlet that offered advice on how to circumvent the immigration rules, such as by alleging a domestic violence situation. Nichols then left Akinwande and moved to Colorado. While she was there, Akinwande called her and asked her to file immigration papers for him. She testified that she wrote the letter to the INS because Akinwande was calling her house and "repeatedly threatening" her.

In contrast, the IJ found that Akinwande was not a credible witness. This was based on his submission of altered documents, his inconsistent and improbable testimony, and the contrary testimony by Nichols. Among other things, Akinwande claimed that Nichols, whom he thought was the "perfect woman" before their marriage, was actually a drug abuser and a gang member who threatened his life and bragged about being a murderess. Nichols was employed as a state correctional officer and said that

-4-

she was subject to drug testing; reasonably enough, the IJ deemed Akinwande's allegations of Nichols' drug abuse unfounded. The IJ was also very skeptical about Akinwande's claim that he was a victim of abuse by Nichols. The IJ noted that Akinwande also claimed to have been abused by his first wife, despite the fact that his Nigerian divorce decree indicated that he abused her. In addition, the IJ pointed to inconsistencies in Akinwande's account of an alleged assault against him by Nichols and her gang friends. Furthermore, Nichols said that Akinwande was in possession of a pamphlet that advised that he could self-petition for adjustment of status if he were involved in a domestic violence situation, and he made repeated references in his testimony to Rhode Island domestic abuse law.[1]

The IJ determined that Akinwande had entered into the marriage with Nichols for the purpose of evading the immigration laws and obtaining legal permanent residence based on the marriage, noting that his efforts to paint himself as a victim of domestic abuse once Nichols wanted to end the marriage were consistent with this theory.

Under 8 U.S.C. § 1255, the Attorney General may, in his discretion, adjust the status of a qualifying alien if "(1) the alien makes an application for such adjustment, (2) the alien is

---

[1] Akinwande and Nichols lived in Rhode Island during their brief marriage.

eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." 8 U.S.C. § 1255(a). A petition for an immediate relative visa cannot be approved if it is determined "that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws." 8 U.S.C. § 1154(c). Accordingly, the IJ denied Akinwande's application for adjustment of status because he was prohibited by § 1154(c) from receiving an immediate relative visa and thus could not satisfy the third prong for adjustment under § 1255.

The IJ then went on to hold that even if the § 1154(c) bar was not applicable to Akinwande, he would still be ineligible for adjustment of status because he failed to meet the second prong of § 1255, which requires that the alien seeking adjustment be "admissible." Pursuant to 8 U.S.C. § 1182(a)(6)(C)(i), "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) [an immigration] benefit . . . is inadmissible." Having determined that Akinwande submitted fraudulent documents in support of his asylum application, the IJ deemed him inadmissible under § 1182. The IJ declined to waive this ground of inadmissibility, finding that there was no reliable evidence to support a determination that

-6-

Akinwande's removal would result in extreme hardship to his United States citizen wife or their child.  See 8 U.S.C. § 1182(i).

Furthermore, the IJ noted that even if Akinwande were eligible for adjustment, she would still deny his application as a matter of discretion on the basis of the "negative factors" discussed in the decision.

The IJ also denied Akinwande's application for voluntary departure because she found that he gave false testimony during the proceedings and lacked the requisite good moral character to be statutorily eligible.  See 8 U.S.C. § 1229(c).  In the alternative, the IJ denied voluntary departure in the exercise of discretion, based on Akinwande's submission of fraudulent documents and false testimony.  The IJ ordered Akinwande deported to Nigeria.

In the face of this formidable array of reasons for denying his applications, Akinwande focuses on knocking out the testimony of his ex-wife on the ground that both due process and INS regulation 8 C.F.R. § 1003.25 prohibit telephone testimony from a witness in INS hearings.  He proceeds on the theory that the telephone testimony infected every determination by the IJ -- both factual and legal -- and that if it were excluded, the remaining evidence would not be sufficient to support the IJ's conclusions. There is little need to describe further the record of evidence of persistent fraud by Akinwande.  If the ex-wife's telephone

testimony was admissible, it was sufficient to doom the petitioner's arguments here.

### III.

Initially, there is an issue of whether Akinwande preserved an objection to the telephone testimony on which his argument hangs. Akinwande's counsel twice orally objected to the possibility of having Nichols testify by telephone at the hearing. When counsel objected the second time and was overruled, he carried on his protest and called the decision "an outrage." At that point, the IJ made it clear that the objection had been decisively overruled. She said: "Sir, you have been overruled. You can take it up to the Board but I'm not going to have any type of this behavior in my court room. Period." However, the IJ later made it very clear that she would again entertain counsel's objection to taking testimony by telephone. When Nichols could not be reached by telephone at the March 3, 2000 hearing, the INS asked the IJ if she would still entertain the telephone testimony if an explanation was offered for Nichols' failure to be reached as scheduled. The IJ stated: "Well, I'll allow you to make a, you can make your motion and I'll just have to rely on it. I can't give you a yes or no because she was supposed to be able to testify here today and respondent's counsel will be able to lodge any objections" (emphasis added). With that statement, the IJ unmistakably invited

counsel to renew his objection if the INS filed a motion to take Nichols' testimony by telephone.

But Akinwande's counsel did not maintain the objection. Counsel filed no opposition after the government made its formal motion on July 28, 2000 to have Nichols testify by telephone, and counsel was silent when the IJ explained at the hearing on March 27, 2001 that she had granted the INS's unopposed motion. Akinwande abandoned his objection to the telephone testimony by failing to object in writing during the seven months while the motion was pending and then failing to object at the hearing during which the testimony was taken. See De Ocasio v. Ashcroft, No. 03-1629, 2004 WL 1563213, at *3 (1st Cir. July 14, 2004) ("An alien who does not object to the admissibility of evidence at [his] deportation proceeding forfeits any objection to the admission of that evidence."); Figueroa-Torres v. Toledo-Davila, 232 F.3d 270, 272 (1st Cir. 2000) ("a party may not sit by without objection to rulings . . . and then after . . . judgment . . . come forward with objections on appeal"). Akinwande also failed to raise his objection to the telephone testimony in his appeal to the BIA.[2]

Still, in order to ensure that the denial of relief in this case is not a miscarriage of justice, we go on to resolve the

_____

[2]     Akinwande did complain briefly about the telephone testimony in the appeal to the BIA, but only as part of his claim that the IJ had demonstrated extreme bias toward him and his counsel. Akinwande did not assert that the telephone testimony was allowed in violation of INS regulations or the Due Process Clause.

-9-

question of law presented.  Akinwande's initial argument is that the use of the telephone testimony violated 8 C.F.R. § 1003.25, which states, in pertinent part:

> Telephonic or video hearings.  An Immigration Judge may conduct hearings through video conference to the same extent as he or she may conduct hearings in person.  An Immigration Judge may also conduct a hearing through a telephone conference, but an evidentiary hearing on the merits may only be conducted through a telephone conference with the consent of the alien involved after the alien has been advised of the right to proceed in person or, where available, through a video conference . . . .

Akinwande argues that an alien has a right under that regulation to direct that all witnesses appear in person, and he seizes on the language in the regulation that provides "an evidentiary hearing on the merits may only be conducted through a telephone conference with consent of the alien involved after the alien has been advised of the right to proceed in person or, where available, through a video conference."

The plain language of the regulation, however, reads differently.  The "right to proceed in person" belongs to the alien and refers to the alien's appearance at hearings, not to the appearance by witnesses.  The regulation confers on the <u>alien</u> the right to appear in person, not the right to direct that all <u>witnesses</u> appear in person.  That is also how the agency interprets the rule.

Akinwande also argues that the telephone testimony violated his constitutional rights to a fair hearing and to

confront witnesses against him.  But Akinwande was not entitled to the same due process protections as a criminal defendant.  He was entitled to cross-examine witnesses presented by the government, see 8 U.S.C. § 1229a(b)(4)(B), and his counsel did cross-examine Nichols at length.  There was no constitutional violation.  See Beltran-Tirado v. INS, 213 F.3d 1179, 1185-86 (9th Cir. 2000) (upholding the use of telephone testimony in deportation proceedings against a due process challenge).

**IV.**

Because we have already concluded that the IJ properly allowed Nichols to testify via telephone, we take up the rest of Akinwande's arguments stripped of that core element.  What is left of Akinwande's appeal amounts to an attack on the IJ's credibility findings and findings of fact.  We review those findings under the deferential substantial evidence standard.[3]  INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

Substantial evidence supports the IJ's credibility determinations.  The IJ gave specific reasons for those determinations.  See Laurent v. Ashcroft, 359 F.3d 59, 64 (1st Cir. 2004) ("Where . . . the judicial officer who saw and heard the

---

[3]    The government argues that even if this court were to reverse the statutory denials of adjustment of status and voluntary departure, the IJ's alternative denials of those forms of relief as a matter of discretion would not be reviewable.  The government does not rely solely on the proposition that the IJ would have denied relief for discretionary reasons, however, and we need not reach that argument.

-11-

witness makes an adverse credibility determination and supports that determination with specific findings, an appellate court should treat that determination with great respect."). It is enough to note that the many inconsistencies in Akinwande's testimony alone were enough to raise doubts about his credibility. The contrary testimony offered by Nichols, which was a coherent and logical recitation of the same events, understandably cast further doubt on Akinwande's credibility, as did his submission of altered documents.

Having found Nichols credible and Akinwande not credible, the IJ had substantial evidence to supports her factual finding that Akinwande married Nichols for the purpose of obtaining permanent resident status based on the marriage. Akinwande engaged in a pattern of behavior that was consistent with a finding that he was trying to evade the immigration laws. His efforts to marry Nichols quickly, to keep her from learning about his previous marriage, and to portray her as an abuser once she left him evidenced an intent to use the marriage as a vehicle for obtaining permanent resident status.

The IJ also properly denied Akinwande's application for voluntary departure on the ground that he lacked the requisite good moral character. The inconsistencies within Akinwande's own testimony, coupled with the contradictions of his account in Nichols' credible testimony, provided substantial evidence on which

to conclude that Akinwande had given false testimony, and a finding that an alien has given false testimony for the purpose of obtaining immigration benefits bars a finding of good moral character.  <u>See</u> 8 U.S.C. § 1101(f)(6).

## **V.**

The petition for review is **<u>denied</u>**.