# United States Court of Appeals
## For the First Circuit

No. 04-1589

ALEXANDER RODRIGUEZ-RAMIREZ,

Petitioner,

v.

JOHN D. ASHCROFT, ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER

OF THE BOARD OF IMMIGRATION APPEALS

Before

Boudin, Chief Judge,

Torruella and Selya, Circuit Judges.

Robert M. Warren on brief for petitioner.
Peter D. Keisler, Assistant Attorney General, Civil Division,
Terri J. Scadron, Assistant Director, Office of Immigration
Litigation, and Anthony W. Norwood, Senior Litigation Counsel,
Office of Immigration Litigation, on brief for respondent.

February 17, 2005

**SELYA**, **Circuit Judge**. The petitioner, Alexander Rodriguez-Ramirez, seeks judicial review of a final order of the Board of Immigration Appeals (BIA) denying his application for asylum and withholding of removal. He asserts that the Immigration Judge (IJ) ignored the weight of the evidence and, therefore, incorrectly denied his asylum and withholding of removal claims. He further asserts that the BIA erred in not reversing the IJ's rulings. Discerning no error, we deny the petition.

The petitioner, a Guatemalan national, was born in San Sebastian, Guatemala, during the spring of 1984. When he was seventeen, he fled to the United States, allegedly because of his fear of violence in his homeland, and entered illegally. Shortly after his arrival, the Immigration and Naturalization Service (INS)[1] detained him and initiated removal proceedings.

At a hearing on July 31, 2002, the petitioner conceded removability and cross-applied for asylum and withholding of removal. On December 16, 2002, the IJ conducted a hearing on the merits of the petitioner's application. Testifying at that hearing, the petitioner described the two incidents upon which he premised his claims for asylum and withholding of removal. We paraphrase his description of those incidents.

---

[1]The Homeland Security Act of 2002, Pub. L. 107-296, § 471, 116 Stat. 2135, 2205 (codified as amended at 6 U.S.C. § 291(a)), abolished the INS and transferred its duties to the Department of Homeland Security. See Lattab v. Ashcroft, 384 F.3d 8, 13 n.2 (1st Cir. 2004).

The first incident occurred on the evening of April 25, 1990 (when the petitioner was six years old). At that time, he resided with his parents and siblings in San Sebastian. Two masked guerrillas sought to recruit his father into an insurgent movement that was attempting to overthrow the Guatemalan government. When the petitioner's father declined the invitation, the guerrillas assaulted him in the family's home. The petitioner hid under the bed as the violence unfolded and heard the guerrillas tell his father that they would return for him in two days.

As matters turned out, the guerrillas never returned. For aught that appears in the record, the described incident marked the first and last time that those particular guerrillas, or any other political insurgents, ever approached or threatened the petitioner's father. The petitioner himself was never menaced by the guerrillas at any time before, during, or after the incident.

The second incident occurred six years later (when the petitioner was twelve). He testified that, around that time, the army killed a number of innocent people in the region in which he lived, suspecting that they were supporting the guerrillas. While the petitioner did not actually witness any of the killings, he heard about them from his neighbors.

The petitioner alleged that, as a result of these incidents, he fears that he will become a target of the guerrillas' anti-government hostility should he return to his homeland or,

alternatively, that the government will mistake him for a guerrilla (or one sympathetic to the guerrillas) and put him in harm's way.

In a bench decision, the IJ deemed the petitioner's testimony credible but determined that he was not entitled to asylum, withholding of removal, or the privilege of voluntary departure. On a first-tier appeal, the BIA summarily affirmed the IJ's decision. This timely petition for judicial review followed.

We turn directly to the petitioner's claim that the BIA erred in upholding the denial of his application for asylum. After all, a claim for withholding of removal places a more stringent burden of proof on an alien than does a counterpart claim for asylum. See Makhoul v. Ashcroft, 387 F.3d 75, 82 (1st Cir. 2004); see also Da Silva v. Ashcroft, 394 F.3d 1, 4 n.5 (1st Cir. 2004) ("The threshold of eligibility for withholding of removal is higher than the threshold of eligibility for asylum.") (citing cases). Because of that disparity, the BIA's rejection of the petitioner's asylum claim, if sustainable, sounds the death knell for his counterpart claim for withholding of removal. Hence, we begin — and end — with the asylum claim.[2]

In immigration cases, a highly deferential standard of review obtains with respect to fact-driven issues. Putting aside

_____

[2]Before us, the petitioner contests the adverse rulings on asylum and withholding of removal, but not the adverse ruling on voluntary departure. Consequently, the voluntary departure issue is waived. See Makhoul, 387 F.3d at 80.

-4-

errors of law — and none appears here — an inquiring court must uphold the BIA's resolution of such issues so long as its decision is supported by substantial evidence in the record. INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992); Da Silva, 394 F.3d at 4-5. This means that the BIA's determination must stand unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); accord Laurent v. Ashcroft, 359 F.3d 59, 64 (1st Cir. 2004) (explaining that reversal requires that the evidence of record "point[] unerringly in the opposite direction").

In order to establish an entitlement to asylum, the petitioner must show that he is a refugee within the meaning of the immigration laws. See 8 U.S.C. § 1158(b)(1); 8 C.F.R. § 208.13(a). A refugee is a person who cannot or will not return to his country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). To be cognizable, persecution — whether past persecution (which creates a presumption of a well-founded fear of future persecution) or feared future persecution — must be on account of one of the five statutory grounds. Mukamusoni v. Ashcroft, 390 F.3d 110, 119 (1st Cir. 2004); Makhoul, 387 F.3d at 79.

Here, the IJ (and, by extension, the BIA) found that the petitioner had failed to make out a meritorious case under either doctrinal strand. We concur in that assessment.

The argument on past persecution need not detain us. The petitioner contends that he suffered past persecution when, as a young boy, he witnessed guerrillas assaulting his father, and again, six years later, when the army began killing people suspected of insurgency. Both halves of this bifurcated contention lack force.

Although the boundaries of past persecution are somewhat flexible, they must encompass more than threats to life and freedom but less than mere harassment or annoyance. Aguilar-Solis v. INS, 168 F.3d 565, 569-70 (1st Cir. 1999) (collecting cases). In this instance, neither of the two incidents described by the petitioner passes through the appropriate legal screen. We take each incident in turn.

As to the first incident, we acknowledge that watching one's father beaten may be a horrific experience for a young child — but not all horrific experiences translate into persecution. The assault was a single incident, remote in time. It was neither directed at the petitioner — he himself was never attacked (or even threatened, for that matter) — nor based on some characteristic that he and his father shared. Despite their braggadocio, the guerrillas never returned. And, finally, there were no discernible

sequelae.  Viewed against this backdrop, the IJ's (and the BIA's) determination that this isolated violence against a family member was insufficient to establish past persecution must stand.  See Quevedo v. Ashcroft, 336 F.3d 39, 45 (1st Cir. 2003) (stating that "a single incident of persecution, of a short duration . . . not followed by acts of recrimination" was insufficient to establish past persecution).

The second incident is no more compelling.  Although the army apparently undertook a spate of violent activities in the region in which the petitioner lived, that violence was confined to a particular temporal period (long since past).  There is absolutely no proof that the petitioner or his family had done anything to earn the army's enmity, that they were perceived in that light, or that they were targets of this episodic violence (let alone victims of it).  The fact that the family lived in an area that was, for a time, wracked by internecine warfare is not equivalent to undergoing persecution.  See, e.g., Ravindran v. INS, 976 F.2d 754, 759 (1st Cir. 1992) (noting that, in general, "evidence of widespread violence and human rights violations affecting all citizens is insufficient to establish persecution"); accord Debab v. INS, 163 F.3d 21, 27 (1st Cir. 1998).

Of course, an alien who is unable to show past persecution may nonetheless establish eligibility for asylum if he can demonstrate a well-founded fear of future persecution.

<u>Aguilar-Solis</u>, 168 F.3d at 572. To this end, the alien must "not only harbor a genuine fear of future persecution, but also must establish an objectively reasonable basis for that fear." <u>Laurent</u>, 359 F.3d at 65. Here, the objective component is lacking.

The petitioner insists that he has a well-founded fear of future persecution because his father's political views will be imputed to him. The evidence, however, does not show an objectively reasonable basis for this fear. <u>See</u>, <u>e.g.</u>, <u>Ravindran</u>, 976 F.2d at 759 (concluding that fear of persecution based on a relative's political activities was not reasonable where there was no evidence establishing that the petitioner was ever persecuted as a result of those activities or that "the government has a general practice of persecuting extended family members"). The record is opaque as to the <u>actual</u> views held by the petitioner's father, and in all events, the petitioner's father has been living peacefully in San Sebastian during the entire time that the petitioner has been in the United States. If the holder of a political opinion is not a target of ongoing persecution, it strains credulity that one to whom that opinion might be imputed should be regarded as objectively at risk.

If more were needed — and we doubt that it is — the political situation in Guatemala has changed dramatically since the petitioner's childhood. Peace accords were signed in 1996 between the Guatemalan government and the insurgent forces, who had rallied

collectively under the banner of the Guatemalan National Revolutionary Unity (GNRU). These accords put an end to the country's civil war. The petitioner testified that since the signing of the peace accords neither he nor any of his relatives has been approached in a bellicose manner or threatened in any way. That is particularly significant because the petitioner's parents and six siblings still reside in Guatemala (most of them in San Sebastian). Collectively, these facts undermine the objective reasonableness of any fear of future persecution should the petitioner return to Guatemala. See Aguilar-Solis, 168 F.3d at 573.

The petitioner has a fallback position. He asserts that he fears future persecution because he falls into a social group known to oppose the guerrillas. This assertion is hopeless. For one thing, there is no probative evidence in the record suggesting that the guerrillas remain active. According to the State Department's 2002 Country Report on Human Rights Practices for Guatemala, the GNRU has become part of the establishment. It is currently recognized as a bona fide political party and, in the 1999 general elections, won nine seats in the national legislature. For another thing, there is no evidence that the petitioner is, or is regarded in Guatemala as, a person who opposes the guerrillas. Last — but not least — a person who claims a fear of persecution on account of social group membership must at a bare minimum identify

with particularity the social group with which he claims to be associated. See Da Silva, 394 F.3d at 5-6. The petitioner has failed to meet this benchmark.[3]

We need go no further. This is a case in which the petitioner's testimony, taken at face value, does not objectively support, let alone compel, a conclusion contrary to that reached by the agency. It follows that substantial evidence underpins the rejection of the petitioner's claims that he experienced past persecution and that he harbors a well-founded fear of future persecution. This finding dooms not only the petitioner's quest for asylum but also his quest for withholding of removal.

**The petition for judicial review is denied**.

---

[3]To the extent that the petitioner is suggesting that he belongs to the social group of young men who oppose the guerrillas, the record is devoid of any evidence indicating that the petitioner belonged to or was affiliated with any organized social group. The record is similarly devoid of any evidence that young men in general have reason to fear persecution in Guatemala.