Petrit KASNECI, Petitioner,

v.

Alberto GONZALES, Attorney General of the United States, Respondent.

No. 04–2657.

United States Court of Appeals, First Circuit.

Submitted July 6, 2005.

Decided July 21, 2005.

Charles Christophe and Christophe & Associates, P.C., on brief for petitioner.

William J. Schneider, Assistant United States Attorney, District of Maine, and Paula D. Silsby, United States Attorney, on brief for respondent.

Before SELYA, LYNCH and LIPEZ, Circuit Judges.

LYNCH, Circuit Judge.

Petitioner Petrit Kasneci, a native and citizen of Albania, seeks review of the Board of Immigration Appeals' (BIA) deni-

al of his application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). Finding ample evidence to support the BIA's decision, we deny the petition for review.

## I.

Kasneci entered the United States through Los Angeles International Airport on or about September 27, 2002, using a fraudulent Italian passport. On January 24, 2003, he filed an application for asylum and other relief. His essential claim, elaborated in testimony at a November 6, 2003 hearing before an Immigration Judge (IJ), was that he suffered persecution in Albania because of his involvement with that country's Democratic Party.

Kasneci testified that he became a member of the Democratic Party in 1994 and that he participated in party meetings and demonstrations. He said he was attacked twice—first in 1997, and again in 2001—at the family-owned gas station where he worked, in the Albanian town of Tepelene. The first time, he claimed, the attack was carried out by neighbors and townspeople he recognized as members of the ruling Socialist Party; the armed attackers called him a "Democratic Party puppy," beat him, robbed the gas station, and set fire to the station's office. After that attack, Kasneci spent several months hiding at his aunt's home in another town. He then returned to Tepelene and resumed working at the gas station, which his family had rebuilt.

In June 2001, Kasneci testified, the station was attacked again: seven armed men beat Kasneci and his uncle, Estref Kasneci, and again set fire to the office. Kasneci said the attackers, whom he recognized as residents of his town, did not ask for money. He testified that two attackers were dressed in military uniforms and that as the men beat him they said, "[Y]ou're not

going to win. This is our victory. It's not for you. You cannot take our victory from us." Kasneci testified he suffered burns on his back as the attackers pushed him toward the flaming office.

After the second attack, Kasneci testified, he again went to stay with his aunt, this time for more than a year. His family again rebuilt the station but abandoned it after a few months. Kasneci eventually fled to the United States instead of living elsewhere than his hometown or joining family members who had gone to Greece.

Kasneci offered little in the way of documentary evidence of these attacks, and offered nothing that tied them to his political affiliations. He submitted a letter from his uncle, but the letter—though it was purportedly written in 2002—did not mention the 2001 attack and failed to state either that the 1997 attackers were Socialists or that they attacked Kasneci because he was a Democrat.

At the conclusion of the November 6 hearing, the IJ issued an oral decision denying Kasneci's application for asylum, withholding of removal and CAT relief. As to fear of persecution, the IJ found that Kasneci had not met his burden for two reasons.

First, the IJ found he was not credible on anything other than the fact that the gas station attacks occurred, and not credible regarding whether the attacks were related to his political activity or to any of the other enumerated grounds under which an applicant can claim refugee status. In support, the IJ noted, inter alia, that (1) Kasneci was unfamiliar with basic facts about the Democratic Party, including its date of formation and the fact that it had participated in a coalition with the Socialist Party; (2) the letter from Kasneci's uncle contained no information subsequent to 1997 and no details on the gas

station attacks; and (3) a letter from the Democratic Party in support of Kasneci's application listed the wrong date of birth for Kasneci and said he held a party management position, even though Kasneci himself testified that he did not. The IJ also noted that Kasneci had used a fraudulent passport to enter the United States and found that that fraud tainted the rest of his testimony.

Second, the IJ found that notwithstanding Kasneci's lack of credibility, he still did not present a prima facie case. This second conclusion was based on two findings: (1) Kasneci's own testimony demonstrated that he could safely live elsewhere in Albania—to wit, at his aunt's house, and (2) the incidents Kasneci described did not constitute persecution and did not create a basis for a well-founded fear of future persecution.

As to Kasneci's other claims, the IJ held that the failure of Kasneci's asylum claim doomed his withholding claim by definition. Second, the IJ held that Kasneci had not met his CAT burden because his injuries did not meet the definition of torture and because he had not shown he was attacked by the government or with a public official's acquiescence.

Kasneci appealed. On November 12, 2004, the BIA affirmed in a per curiam opinion, stating that its "conclusions upon review of the record coincide with those the Immigration Judge articulated...." This petition for review followed.

## II.

Since the BIA indicated that its conclusions paralleled those of the IJ, we review the BIA's order by examining the IJ's oral decision. *See Albathani v. INS*, 318 F.3d 365, 373 (1st Cir.2003) ("When the BIA does not render its own opinion ... and either defers [to] or adopts the opinion of the IJ, a Court of Appeals must then review the decision of the IJ.") (quoting *Gao v. Ashcroft*, 299 F.3d 266, 271 (3d Cir.2002)) (second alteration in *Albathani*). We review an IJ's factual findings and credibility determinations under the deferential substantial evidence standard. *INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992); *Akinwande v. Ashcroft*, 380 F.3d 517, 522 (1st Cir.2004). The standard applies to the asylum claim as well as the withholding of removal and CAT claims. *See Settenda v. Ashcroft*, 377 F.3d 89, 93 (1st Cir.2004). Under the substantial evidence test, the IJ's determination must stand "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see Rodriguez–Ramirez v. Ashcroft*, 398 F.3d 120, 123 (1st Cir.2005). As to issues of credibility, we give great deference to an IJ's determinations so long as the IJ provides "specific reasons for those determinations." *Akinwande*, 380 F.3d at 522; *see also Syed v. Ashcroft*, 389 F.3d 248, 251–52 (1st Cir. 2004).

### A. The Asylum Claim

■ An applicant for asylum bears the burden of establishing his eligibility by proving past persecution or a well-founded fear of future persecution on account of "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 208.13(b). To meet this burden, the applicant must provide credible, persuasive, and sufficiently detailed testimony in support of his claim. *Diab v. Ashcroft*, 397 F.3d 35, 39–40 (1st Cir.2005); 8 C.F.R. § 208.13(a) (2005). An applicant's testimony alone, "if credible, may be sufficient to sustain the burden of proof without corroboration," 8 C.F.R. § 208.13(a), but if the applicant is found not to be entirely credible, corroborating evidence may be

used to "bolster an applicant's credibility." *Diab,* 397 F.3d at 39–40.

The IJ deemed Kasneci credible only in that there were several violent assaults at his gas station. She also found that the few corroborating documents Kasneci offered "actually seem to undermine" his testimony. Kasneci argues that this was error—that the IJ should have found him credible because the inconsistencies in his testimony and documentation were minor. He also argues that the IJ erred in finding that he could safely live elsewhere in Albania, given that he remained in hiding during his stay with his aunt. Finally, he argues that because he credibly testified that the gas station attackers referenced his Democratic Party membership, the IJ erred in finding an insufficient nexus between the attacks and his political activity.

We need proceed no further than the question of credibility to reject Kasneci's argument. Substantial evidence supported the IJ's finding that Kasneci was not credible in linking the gas station attacks to his political beliefs: the IJ detailed specific, cogent rationales for the finding, and while Kasneci downplays the importance of each, he certainly offers no reason why we would be "compelled to conclude" that Kasneci was entirely credible. *See Rodriguez–Ramirez,* 398 F.3d at 123. Further, corroborating evidence does not help Kasneci here, but undercuts his claim. His documentation did not support the most crucial aspect of his claim—that he was attacked because of his politics—and substantial evidence supports that finding.

B. *The Withholding of Removal and CAT Claims*

■ "[A] claim for withholding of removal places a more stringent burden of proof on an alien than does a counterpart claim for asylum." *Rodriguez–Ramirez,*

398 F.3d at 123. Consequently our denial of Kasneci's asylum claim means, a fortiori, that his withholding of removal claim also fails.

■ Finally, Kasneci's CAT claim is without merit. To seek relief under the CAT, an applicant must "establish that it is more likely than not that he or she would be tortured if removed...." 8 C.F.R. § 208.16(c)(2). To fall within the ambit of CAT protection, any alleged torture must be "with the consent or acquiescence of a public official who has custody or physical control of the victim." *Elien v. Ashcroft,* 364 F.3d 392, 398 (1st Cir.2004); *see also* 8 C.F.R. § 208.18(a). We need not consider whether the injuries Kasneci suffered in the two attacks amounted to torture. Given that the IJ found no link between the attacks and the attackers' alleged political or government affiliations, substantial evidence clearly supports the finding that Kasneci did not show that the attacks were carried out by or with the acquiescence of a public official.

### III.

Since substantial evidence supports the rejection of each of Kasneci's claims, his petition for review is *denied.*