

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-15-2007

# Tjioe v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1470

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Tjioe v. Atty Gen USA" (2007). 2007 Decisions. Paper 1617.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1617

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 06-1470

JONG T. TJIOE

Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES,

Respondent

On Petition for Review of Final Decision of the
Board of Immigration Appeals
BIA No.: A96-257-947
Immigration Judge: Donald Vincent Ferlise

_____

Submitted February 12, 2006

Before: SMITH and FISHER, *Circuit Judges*,
and DIAMOND*, District Judge**

(Filed: February 15, 2007 )

_____

OPINION

_____

---

*The Honorable Gustave Diamond, Senior District Judge for the Western District of
Pennsylvania, sitting by designation.

SMITH, *Circuit Judge*.

I.

Jong T. Tjioe petitions for review of a final order of the Board of Immigration Appeals (BIA), affirming the denial by the Immigration Judge (IJ) of Tjioe's application for asylum and withholding of removal.[1] We will dismiss in part and deny in part Tjioe's petition for review.

Tjioe is a native and citizen of Indonesia. He alleged in his application for asylum that he had been persecuted in Indonesia on the basis of both his Chinese ethnicity and his Roman Catholic faith. Tjioe alleges that he suffered from persecution in four separate incidents in Indonesia. The first, in 1990, was based on Tjioe's denial of admission to a state university. The second, during the riots of May 1998, involved Tjioe's observation of six Chinese people forced out of their car by a mob, which subsequently set the car on fire. The third, in 1999, was based on pressure Tjioe felt to convert to Islam by his employer. The fourth, in 2000, involved an incident where two possibly drunk people on a motorcycle threw a bottle at a car that contained Tjioe and his family. When Tjioe stopped the car, he was allegedly punched and several Indonesian Muslims allegedly made anti-Chinese statements to Tjioe and his family. In October 2001, Tjioe entered the

_____

[1] We note that Tjioe has waived his Convention Against Torture (CAT) claim because he does not sufficiently challenge the BIA's denial of protection under the CAT. *See Lie v. Ashcroft*, 396 F.3d 530, 532 n.1 (3d Cir. 2005).

United States. He did not apply for asylum until February 2003.

At Tjioe's initial hearing before Immigration Judge Donald Ferlise on May 15, 2003, Tjioe conceded removability but requested asylum, withholding of removal, and relief under the Convention Against Torture. The IJ continued this hearing to November 23, 2004, so that Tjioe could submit further evidence showing changed or extraordinary circumstances that might explain the untimely delay in Tjioe's asylum application. At the November 23, 2004 hearing, the IJ denied Tjioe's application but granted him voluntary departure. The IJ found that, although Tjioe was "basically a credible witness," the four incidents did not rise to the level of past persecution. The IJ further found that Tjioe did not demonstrate a reasonable fear of future persecution, as the four incidents "appear to be isolated events and the Court finds it highly unlikely that these circumstances would present themselves again to replicate what has happened to [Tjioe] in the past."

The BIA exercised jurisdiction under 8 C.F.R. § 1003.1(b) and, on January 5, 2006, adopted and affirmed the IJ's decision. In doing so, it agreed with the IJ that Tjioe's asylum claim was untimely and that he had failed to demonstrate changed circumstances materially affecting his asylum eligibility or extraordinary circumstances excusing his tardiness. As a result, the BIA considered only the merits of Tjioe's claim for withholding of removal and relief under the CAT, but agreed with the IJ that Tjioe did not meet the burdens of proof on his claims of persecution and torture. This timely petition for review followed.

II.

We lack jurisdiction to review the BIA's adoption of the IJ's finding that Tjioe's asylum application was time-barred. *See* 8 U.S.C. § 1158(a)(2) (one year time bar). Further, we lack jurisdiction under 8 U.S.C. § 1158(a)(3) to review the determination that Tjioe failed to demonstrate circumstances excusing his untimely application. *Tarrawally v. Ashcroft*, 338 F.3d 180, 185 (3d Cir. 2003). We therefore dismiss this portion of the petition for review.

We exercise jurisdiction to review Tjioe's claim for withholding of removal under 8 U.S.C. § 1231(b)(3)(A). *See* 8 U.S.C. § 1252(a). "[T]he Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group or political opinion." 8 U.S.C. § 1231(b)(3)(A). The alien must establish by a "clear probability" that his life or freedom would be threatened in the proposed country of deportation. *INS v. Stevic*, 467 U.S. 407, 413 (1984). A clear probability means "more likely than not." *Id*. at 429-30. We have defined 'persecution' as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Gabuniya v. Attorney General*, 463 F.3d 316, 321 (3d Cir. 2006) (quotation omitted).

In this case, the IJ determined that Tjioe had neither suffered past persecution nor had a well-founded fear of future persecution. "We review an IJ's factual findings,

4

including his or her determination of whether an alien was subject to persecution or has a well-founded fear of future persecution, under the substantial evidence standard." *Toure v. Attorney General*, 443 F.3d 310, 316 (3d Cir. 2006) (citation omitted); *Abdille v. Ashcroft*, 242 F.3d 477, 483 (3d Cir. 2001). Under the substantial evidence standard, "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

The record before us does not compel the conclusion that Tjioe established his eligibility for withholding of removal. The IJ properly concluded that the four incidents recounted by Tjioe do not amount to past persecution and, relatedly, do not establish a basis for fearing future persecution based on his ethnicity or religion. The first incident, where Tjioe alleged that he was denied admission to a state university, does not rise to the high threshold of persecution as defined in *Gabuniya*, *supra*. As the IJ noted, Tjioe later attained an accounting degree from a separate state university in Indonesia. The second incident, where Tjioe and a friend observed several Chinese people being abused by an unruly mob during the May 1998 riots, does not personally involve Tjioe in a manner sufficient to constitute persecution. Tjioe stated that he was not physically harmed during the riots at all. *See, e.g.*, *Rodriguez-Ramirez v. Ashcroft*, 398 F.3d 120, 124 (1st Cir. 2005) ("[W]e acknowledge that watching one's father beaten may be a horrific experience for a young child–but not all horrific experiences translate into persecution."). The third incident, where his employer attempted to convert him to Islam, provides no

5

indication that the Indonesian government contributed to this pressure to convert or that this act was "committed by the government or forces the government is either unable or unwilling to control." *Lie v. Ashcroft*, 396 F.3d 530, 537 (3d Cir. 2005) (quotation omitted). The fourth incident, by far the most serious of the lot, involved testimony by Tjioe that two individuals on a motorcycle smashed a bottle into his car window and then assaulted him. Further, several individuals purportedly made anti-Chinese statements to Tjioe. In his testimony, Tjioe conceded that none of the assailants knew that Tjioe practiced Roman Catholicism, and that his car was not targeted because he was Chinese. Rather, the bottle was thrown from the motorcycle before either of the people on the motorcycle knew the car's occupants were Chinese. This isolated incident does not rise to the level of persecution. *See id*. at 536 (stating that the petitioner's "account of two isolated criminal acts, perpetrated by unknown assailants, which resulted only in the theft of some personal property and a minor injury, is not sufficiently severe to be considered persecution").

Tjioe's basis for his well-founded fear of future persecution claim derives from his past persecution claims based on these four incidents. Because we agree with the BIA and the IJ that Tjioe has not made out a claim for past persecution, we also conclude that he has presented no evidence to carry his burden of proof for the likelihood of future persecution. We also note that Tjioe's siblings remain in Indonesia. *See id*. at 537 (stating that "when family members remain in petitioner's native country without meeting

harm, and there is no individualized showing that petitioner would be singled out for persecution, the reasonableness of a petitioner's well-founded fear of future persecution is diminished").

## III.

For these reasons, we will dismiss in part and deny in part Tjioe's petition for review.